UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:21-CV-00104-GNS

JOSEPH DAVID COMPTON                                                                    PLAINTIFF

v.

KYLE J. LAING                                                                             DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Defendant's Motion for Summary Judgment (DN 19) and Plaintiff's Motion to Appoint Counsel (DN 22). The matter is ripe for adjudication. For the reasons stated below, Defendant's motion is **DENIED**, and Plaintiff's motion is **GRANTED**.

**I.      STATEMENT OF THE FACTS**

The pertinent events here were recorded by the body camera of Defendant Bowling Green Police Officer Kyle J. Laing ("Laing"). (Laing Video 9:07 A.M., Aug. 16, 2020, DN 25). On August 16, 2020, Laing responded to a trespassing and theft complaint in a Bowling Green neighborhood and fellow Officer Michael Jonkers ("Jonkers") was on the scene when Laing arrived. (Def.'s Mot. Summ. J. 1-2, DN 19). Upon hearing Jonkers yell from behind a nearby house, Laing followed the noise down a driveway and into the back yard of a residence. (Laing Video 0:50-1:00). While running down the driveway, Laing informed dispatch that a suspect was fleeing in a vehicle. (Laing Video 0:50-1:00). Upon entering the backyard, Laing observed Plaintiff David Compton ("Compton") driving a vehicle from the back of the lot directly towards him. (Laing Video 0:57-0:59). With his gun already drawn, Laing yelled "stop the car, stop the

car now," but Compton continued driving toward Laing. (Laing Video 0:55-1:01). Laing moved out of the way of the vehicle, which rolled past Laing down the driveway toward the street. (Laing Video 1:00-1:03). As the car passed him, Laing fired three shots into the left side of the vehicle, one of which struck Compton in the back. (Laing Video 1:02). Determining where the front of the car was in reference to Laing requires intense scrutiny of about one second of video footage. (Laing Video 1:02). Laing appears to have been toward the front side of the vehicle when the first shot was fired, but the car had completely passed him and was to the right of the house by the time the last shot was fired. (Laing Video 1:00-1:03). Compton subsequently pleaded guilty to charges relating to the incident of wanton endangerment in the first degree, and fleeing or evading police in the first degree.[1] (Def.'s Mot. Summ. J. Ex. C, at 1, 4, DN 19-3).

---

[1] Wanton endangerment in the first degree is defined as follows:

> (1) A person is guilty of wanton endangerment in the first degree when, under circumstances manifesting extreme indifference to the value of human life, he wantonly engages in conduct which creates a substantial danger of death or serious physical injury to another person.
> (2) Wanton endangerment in the first degree is a Class D felony.

KRS 508.060. The crime of fleeing or evading police in the first degree is defined as follows:

> (1) A person is guilty of fleeing or evading police in the first degree:
> (a) When, while operating a motor vehicle with intent to elude or flee, the person knowingly or wantonly disobeys a direction to stop his or her motor vehicle, given by a person recognized to be a police officer, and at least one (1) of the following conditions exists:
> > 1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720;
> > 2. The person is driving under the influence of alcohol or any other substance or combination of substances in violation of KRS 189A.010;
> > 3. The person is driving while his or her driver's license is suspended for violating KRS 189A.010; or
> > 4. By fleeing or eluding, the person is the cause, or creates substantial risk, of serious physical injury or death to any person or property; or

Compton, acting *pro se*, asserts a 42 U.S.C. § 1983 claim against Laing for excessive force. (Order 6, DN 6). Laing has moved for summary judgment, which is ripe for decision. (Def.'s Mot. Summ. J. 8).

## II.  JURISDICTION

Jurisdiction is based on federal question jurisdiction pursuant to 28 U.S.C. § 1331.

## III.  DISCUSSION

### A.  Defendant's Motion for Summary Judgment

Laing moves for summary judgment on Compton's claims. Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The moving party's burden may be discharged by demonstrating that there is an absence of evidence to support an essential element of the nonmoving party's case for which it has the burden of proof. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case. *Id.* If the record taken as a whole could not lead

---

> (b) When, as a pedestrian, and with intent to elude or flee, the person knowingly or wantonly disobeys an order to stop, given by a person recognized to be a peace officer, and at least one (1) of the following conditions exists:
>   1. The person is fleeing immediately after committing an act of domestic violence as defined in KRS 403.720; or
>   2. By fleeing or eluding, the person is the cause of, or creates a substantial risk of, serious physical injury or death to any person or property.
> (2) Fleeing or evading police in the first degree is a Class D felony."

KRS 520.095.

the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). When bodycam footage of the events at issue is available, "[t]o the extent that videos in the record show facts so clearly that a reasonable jury could view those facts in only one way, those facts should be viewed in the light depicted by the videos." *Latits v. Phillips*, 878 F.3d 541, 544 (6th Cir. 2017) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007)). On the other hand, any relevant gaps or uncertainties left by the video must be viewed in the light most favorable to the nonmoving party. *Id.* (citing *Godawa v. Byrd*, 798 F.3d 457, 463 (6th Cir. 2015)).

### 1. *Compton's Admissions*

Laing argues that Compton's claim fails as a matter of law because Compton did not respond to requests for admission so that Compton is deemed to have admitted that Laing did not use excessive force against him. (Def.'s Mot. Summ. J. 4-5). Typically, when a plaintiff fails to respond to a request for admission within 30 days, the matter is deemed admitted. Fed. R. Civ. P. 36(a)(3). However, admissions from a pro se litigant that are deemed admitted by default "cannot be the sole basis for granting summary judgment if Plaintiff was not warned in the requests for admissions of the consequence of failing to respond timely." *Jones-Bey v. Conrad*, No. 3:16-CV-723-DJH, 2020 WL 2736436, at *4 (W.D. Ky. May 26, 2020) (citation omitted). As a sister court has explained the reasoning behind this exception:

> [P]ro se prisoners are entitled to notice that matters found in requests for admission will be deemed admitted unless responded to within 30 days after such requests have been served. Without such notice, pro se prisoners will most likely not be aware that failure to respond to a request for admission would result in the admission of the matters contained in the request. To hold otherwise would allow parties opposing pro se prisoner complaints to use Rule 36 procedures as a snare which prevents pro se prisoners from opposing summary judgment.

*Id.* (alteration in original) (quoting *Diggs v. Keller*, 181 F.R.D. 468, 469 (D. Nev. 1998)). The requests for admission Laing served on Compton did not contain any indication that failure to respond would be deemed an admission. (Def.'s Mot. Summ. J. Ex. D, DN 19-4). In light of Laing's failure to warn Compton of the effect of a failure to deny any requested admissions, summary judgment will not be granted based solely on the basis of Compton's failure to respond.

### 2. *Heck* Argument

Laing also argues that Compton's claim is barred by his guilty plea and conviction to charges including theft, wanton endangerment and fleeing or evading police. (Guilty Plea 4, DN 24-3). In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court established that a plaintiff does not have a cause of action under 42 U.S.C. § 1983 when establishing the claim "necessarily demonstrates the invalidity of the conviction" and the plaintiff's criminal conviction has not been reversed or in validated. *Id.* at 481-82 (citation omitted). The *Heck* bar of a plaintiff's Section 1983 claim depends on whether success on the civil claim would necessarily negate an element of the criminal conviction. *Miller v. Vill. of Pinckney*, 365 F. App'x 652, 655 (6th Cir. 2010) (citing *Heck*, 512 U.S. at 487 n.6). If the Section 1983 claim would necessarily render Compton's conviction invalid, his claim is not cognizable under Section 1983 unless he can "prove that his conviction has been invalidated in some way." *McDonough v. Smith*, 139 S. Ct. 2149, 2157 (2019) (citing *Heck*, 512 U.S. at 487).

In the excessive force context, a Section 1983 claim conflicts with a conviction "when the criminal provision makes lack of excessive force an element of a crime . . . [and] when excessive force is an affirmative defense to the crime." *Settles v. McKinney*, No. 3:12-CV-00368, 2013 WL 5346503, at *3 (W.D. Ky. Sept. 23, 2013) (alteration in original) (quoting *Schreiber v. Moe*, 596 F.3d 323, 334 (6th Cir. 2010)). Laing cites no Kentucky law indicating that any of Compton's

subject convictions contain an element negating excessive force or for which excessive force is an affirmative defense. Even if excessive force was an affirmative defense to Compton's charges, there would still be questions of fact that prevent Compton's Section 1983 claims from being barred by *Heck*. "The Sixth Circuit [] has expressly limited the applicability of *Heck* based on the timing of the alleged excessive force." *Michaels v. City of Vermillion*, 539 F. Supp. 2d 975, 992 (N.D. Ohio 2008) (citing *Swiecicki v. Delgado*, 463 F.3d 489, 494-95 (6th Cir. 2006)). In *Michaels,* an excessive force claim was brought by a plaintiff who was convicted of resisting arrest. *Id.* at 992. The court found that *Heck* only bars the claim when "the force at issue is allegedly used *prior to, or in conjunction with***,** the suspect's resistance." *Id.* (citation omitted). "When the alleged excessive force is used *after* the suspect ceases resisting arrest, the *Heck* rule does not apply." *Id.* (citation omitted). Similarly, in *Curran v. Aleshire*, 67 F. Supp. 3d 741 (E.D. La. 2014), the action giving rise to the plaintiff's conviction "was a swing at the officer which was followed by the events giving rise to the claims of excessive force." *Id.* at 749. The court held there was a dispute of material fact regarding whether "the events were conceptually distinct" and thus whether an excessive force claim "would necessarily imply the invalidity of [the plaintiff's] conviction." *Id*. (citation omitted).

In this instance, the bodycam footage shows that Compton evaded the police and drove his vehicle toward Laing immediately before or contemporaneously with Laing's gunshots at Compton. Since the gunshots were clearly in response to Compton's criminal conduct, not vice versa, the claimed excessive force by Laing could not serve to negate any elements of the criminal charges to which Compton pleaded guilty. (Def.'s Mot. Summ. J. Ex. C, at 1, 4). Therefore, Compton's Section 1983 claim is not barred by *Heck*.

### 3. *Qualified Immunity*

Laing also seeks dismissal on the basis of qualified immunity. When evaluating a qualified immunity claim on summary judgment, the proper two-part inquiry is: (1) "whether the facts, viewed in the light most favorable to the plaintiff, could support a finding that the defendant has violated the plaintiff's constitutional rights"; and (2) whether "the defendant violated 'clearly established' constitutional rights." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007) (citation omitted). "Both prongs of this test must be met 'for the case to go to a factfinder to decide if [the] officer's conduct in the particular circumstances violated a plaintiff's clearly established constitutional rights. If either one is not satisfied, qualified immunity will shield the officer from civil damages.'" *Gordon v. Bierenga*, 20 F.4th 1077, 1082 (6th Cir. 2021) (alteration in original) (citations omitted). Ultimately, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. *Rodriguez v. Passinault*, 637 F.3d 675, 689 (6th Cir. 2011) (citations omitted).

#### a. **Violation of a Constitutional Right**

Compton alleges that Laing violated his Fourth Amendment right to be free from excessive force. (Order 6, DN 6). "The Fourth Amendment's prohibition against unreasonable seizures protects citizens from excessive force by law enforcement officers." *Latits*, 878 F.3d at 547 (citation omitted). While some degree of physical force may be required for officers to fulfill their duties, "the Fourth Amendment requires the amount of force to be objectively reasonable under the totality of the particular circumstances." *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)). Whether an officer's actions are reasonable is an objective standard "considered from the perspective of a hypothetical reasonable officer in the defendant's position and with his knowledge at the time, but without regard to the actual defendant's subjective intent when taking his actions."

*Id.* (citations omitted). "Specifically, we evaluate 'whether reasonable officers in the position of [Laing] would have believed that it was lawful under the circumstances to use the same degree of force . . . .'" *Hermiz v. City of Southfield*, 484 F. App'x 13, 15 (6th Cir. 2012) (citation omitted). Courts have identified a non-exclusive list of three factors that should be analyzed as part of determining the constitutionally permissible amount of force for a given situation: (1) "the severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether [the suspect] is actively resisting arrest or attempting to evade by flight." *Graham*, 490 U.S. at 396 (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

In applying these factors, courts should avoid examining the officer's actions with the "20/20 vision of hindsight" and must consider reasonableness in light of the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary for a particular situation." *Sigley v. City of Parma Heights*, 437 F.3d 527, 534 (6th Cir. 2006) (internal quotation marks omitted) (citations omitted). "At the same time, the fact that a situation unfolds quickly does not, by itself, permit officers to use deadly force. Rather, qualified immunity is available only where officers make split-second decisions in the face of serious physical threats to themselves and others." *Latits*, 878 F.3d at 547 (internal quotation marks omitted) (citation omitted). "The Supreme Court has stated that because the test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application . . . its proper application requires careful attention to the facts and circumstances of each particular case . . . ." *Sigley*, 437 F.3d at 536 (internal quotation marks omitted) (citing *Graham*, 490 U.S. at 396).

The use of deadly force to prevent a suspect from escaping is per se constitutionally unreasonable. *Id.* at 533-34. "It is not better that all felony suspects die than that they escape."

*Id.* (quoting *Garner*, 471 U.S. at 11). Thus, when the fleeing suspect does not pose an immediate threat to the officer or others, "the harm resulting from failure to apprehend him does not justify the use of deadly force to do so . . . ." *Id.* (quoting *Garner*, 471 U.S. at 11). In other words, "[a] police officer may not seize an unarmed, non-dangerous suspect by shooting him dead . . . ." *Id.* (citing *Garner*, 471 U.S. at 11). The threat requirement, therefore, is "a *minimum* requirement for the use of deadly force." *Latits*, 878 F.3d at 547-48 (internal quotation marks omitted) (citing *Mullins v. Cyranek*, 805 F.3d 760, 766 (6th Cir. 2015)).

In situations involving vehicular flight, the critical question is whether the officer had objective "'reason to believe that the [fleeing] car present[ed] an imminent danger' to 'officers and members of the public in the area.'" *Id.* at 548 (first alteration in original) (quoting *Cass v. City of Dayton*, 770 F.3d 368, 375 (6th Cir. 2014)). As the Sixth Circuit has noted:

> Deadly force is justified against "a driver who objectively appears ready to drive into an officer or bystander with his car, but generally not once the car moves away, leaving the officer and bystanders in a position of safety, unless the officer's prior interactions with the driver suggest that the driver will continue to endanger others with his car."

*Id.* (internal quotation marks omitted) (citations omitted). It has found deadly force justified by prior interactions demonstrating continuing dangerousness only when the "suspect demonstrated multiple times that he either was willing to injure an officer that got in the way of escape or was willing to persist in extremely reckless behavior that threatened the lives of all those around." *Smith v. Cupp*, 430 F.3d 766, 775 (6th Cir. 2005).

The proper inquiry, therefore, is whether Compton presented an imminent danger to the officers or the public at the time Laing fired his weapon. This requires analysis of both the moments before the shots were fired and the prior interactions between Compton and Laing. *Latits*, 878 F.3d at 548. The evidence in this case shows that Compton accelerated directly towards

9

Laing while trying to escape the back yard, turning only at the last moment to avoid Laing who had moved out of the car's path. (Laing Video 0:55-1:01). Laing fired three shots at Compton's vehicle, but it is difficult to determine from the video whether the car had already moved away from Laing when the shots were fired, or if he was still in imminent danger. (Laing Video 1:00-1:03).

A reasonable jury could determine that Laing was not in danger of being hit by the car when he fired at Compton. Seconds before the shooting, Laing was clearly in imminent danger when Compton was driving the car and accelerating directly towards him. However, the video evidence also shows that Laing did not fire his weapon until Compton was much closer to and beginning to move past Laing. Laing's exact proximity to the car and whether he was still in imminent danger is difficult to determine, even with the video evidence, due to the compressed time frame of these events. Because video evidence must be viewed in favor of the non-moving party, a reasonable jury could conclude that Laing was no longer in imminent danger when he fired his gun at Compton. *Latits*, 878 F.3d at 544.

Accepting this view of the circumstances, Compton has a potentially viable claim for violation of his constitutional right to be free from excessive force. First, if Laing and any bystanders were no longer in danger of being hit by the car when Laing fired his weapon, there would no imminent danger and thus Laing would not be justified in using deadly force. Second, there is not sufficient evidence in the record of Laing's prior interactions with Compton to justify the use of deadly force. *Cupp*, 430 F.3d at 775.

In this instance, there is a material factual dispute regarding the constitutionality of Laing's use of deadly force. Therefore, the first prong of the qualified immunity analysis resolves in favor of proceeding to trial.

10

### b. Clearly Established Constitutional Right

Even when there is a constitutional violation, qualified immunity protects the officer unless the right violated was clearly established at the time of the incident. *Williams*, 496 F.3d at 485. "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Gordon*, 20 F.4th at 1082 (citation omitted). Supreme Court precedent sets out general standards governing the bounds of excessive force. For example, it is clearly established that officers can only utilize deadly force when the suspect presents an imminent danger to the officer or those around him. *Latits*, 878 F.3d at 547-48 (citing *Cupp*, 430 F.3d at 775). Likewise, it is clearly established that deadly forced cannot be used to prevent a suspect from fleeing. *Sigley*, 437 F.3d at 533-34.

A more specific analysis is required, however, to determine whether qualified immunity protects an officer's actions under a given set of circumstances. The primary issue is whether the constitutional right allegedly violated was defined at an appropriate level of specificity to be clearly established. *Sigley*, 437 F.3d at 537. A case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Gordon*, 20 F.4th at 1082 (citation omitted). In other words, a case must "squarely govern[]the specific facts at issue." *Id*. (internal quotation marks omitted) (citation omitted). This analysis depends on the specific facts of the case and their similarity to controlling case law in existence at the time of the alleged violation. *Id.* Specificity is especially important in the Fourth Amendment excessive force context, because it is difficult for an officer to determine how the relevant legal doctrine will apply to the particular factual situation faced by the officer. *Id.*

Looking at the bodycam footage in the light most favorable to Compton, as required, Laing fired at least some of the shots once the car had moved past him, at which point he arguably was

no longer in imminent danger. *See Sigley,* 437 F.3d at 548. The particular conduct in this case is 'squarely governed' by the Sixth Circuit's decision in *Hermiz v. City of Southfield*. In *Hermiz*, an officer pulled over Hermiz's car for a traffic stop. *Hermiz*, 484 F. App'x at 14. Hermiz pulled into a parking lot and the officer positioned his car at the entrance of the lot, leaving enough room for a car to pull out without hitting the police car. *Id.* Hermiz stopped for a few seconds and then turned his car around before heading back toward the entrance at about 5-10 miles per hour. *Id.* As the car approached the exit, the officer was "very close to the vehicle" and a witness said the car was "sort of headed in the same direction" as the officer. *Id.* As the car approached and moved past him, the officer fired three shots at Hermiz's car from roughly four feet away. *Id.* The first two shots struck the windshield while the third shot entered in through the driver's side window, killing Hermiz. *Id.* The Sixth Circuit found that the officer lacked justification to fire at least the final shot because "[e]ven if the car appeared to head toward [the officer] at one point, its single pass at five to ten miles per hour does not justify the inference that Hermiz posed an ongoing threat . . . ." *Id.* at 16-17. Likewise, the court found that a reasonable jury could conclude that by the time the final shot was fired a reasonable officer "would have had time to realize that he was no longer in the path of the car and no longer in immediate danger." *Id.* at 16. The court concluded that the officer violated a clearly established right. *Id.* at 17.

The Sixth Circuit's decision in *Hermiz* squarely governs Laing's alleged violation. Whether a clearly established constitutional right was violated is a purely legal question. *Id.* at 17. Assuming that the jury finds that the car had reached Laing's side by the time he fired the last one or two shots and that no bystanders were imperilled, Laing violated a clearly established right. In both this case and *Hermiz*, the officer was standing near the suspect's escape route. *Hermiz*, 484 F. App'x at 14; (Laing Video 1:00-1:02). By the time the last shots were fired, a reasonable jury

12

could conclude that Laing and others were no longer in danger from the car. *Hermiz*, 484 F. App'x at 14; (Laing Video 1:00-1:05).

This case demonstrates the kind of real-life perils faced by law enforcement officers, who can later be potentially second-guessed for their split-second decisions. In this instance, however, the video footage is simply too close for the Court to call. Given that the inferences must be viewed in favor of the non-moving party, a jury could believe that the danger to Laing and the pubic had passed when Laing shot at Compton. For this reason, Laing's motion for summary judgment must be denied.

### B. Plaintiff's Motion to Appoint Counsel

Compton has also made a motion requesting that he be appointed counsel. (Pl.'s Mot. Appoint Counsel, DN 22). There is no constitutional right to counsel in a civil matter. *Lanier v. Bryant*, 332 F.3d 999, 1006 (6th Cir. 2003). Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." Whether to do so is "within the discretion of the court." *Child v. Pellegrin*, 822 F.2d 1382, 1384 (6th Cir. 1987) (internal quotation marks omitted) (citation omitted). In determining whether to grant a plaintiff counsel, courts consider "the type of case and the ability of the plaintiff to represent himself." *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (citation omitted). This case includes complicated legal issues for which a plaintiff is not equipped to represent himself, especially in light of the foregoing analysis denying summary judgment. Thus, the Court finds that exceptional circumstances exist, and the appointment of counsel is warranted, and the Court will appoint counsel by separate order.

## IV. CONCLUSION

For these reasons, **IT IS HEREBY ORDERED** that Defendant's for Summary Judgment (DN 19) is **DENIED**, and Plaintiff's Motion to Appoint Counsel (DN 22) is **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

June 21, 2022

cc: counsel of record
   Joseph David Compton, *pro se*